1
2
3
4
5

UNITED STATES DISTRICT COURT
6
WESTERN DISTRICT OF WASHINGTON
7
AT SEATTLE

8   JULIAN L.,

9                           Plaintiff,          Case No. C23-1146-SKV

10          v.                                  ORDER REVERSING THE
                                                COMMISSIONER'S DECISION
11   COMMISSIONER OF SOCIAL SECURITY,

12                           Defendant.

13

14          Plaintiff seeks review of the denial of his application for Supplemental Security Income

15   (SSI) and Disability Insurance Benefits (DIB).  Having considered the ALJ's decision, the

16   administrative record (AR), and all memoranda of record, the Court **REVERSES** the

17   Commissioner's final decision and **REMANDS** the matter for further administrative proceedings

18   under sentence four of 42 U.S.C. § 405(g).

19   //

20   //

21   //

22   //

23   //

**BACKGROUND**

Plaintiff was born in 1989, graduated high school, and last worked at a self-owned screen-printing business.  AR 485, 255-57, 956, 1070.  Plaintiff has not been gainfully employed since his amended May 2018 onset date.[1]  AR 916.

This case was previously before the Court on appeal in 2021-2022.  *See* AR 1016-31 (March 22, 2022 Order Reversing and Remanding, C 21-887 TLF).  On December 31, 2018, Plaintiff applied for SSI and DIB benefits, and subsequently amended his alleged disability date to May 1, 2018.[2]  AR 255-57, 982, 987.  Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing.  AR 77-170, 174-90. After the first ALJ conducted a hearing in December 2020, the ALJ issued a decision finding Plaintiff not disabled.  AR 987-1002, 1037-77.  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and Plaintiff sought judicial review.  AR 1-6, 1014-15.

On March 22, 2022, on Plaintiff's first appeal, the Court reversed and remanded, finding that the ALJ erred in evaluating Plaintiff's treating neurologist's opinion, in discounting Plaintiff's testimony, and in evaluating Plaintiff's RFC.  AR 1016-31.  The Appeals Council remanded the case for proceedings consistent with the Court's order, and a new ALJ was assigned.  AR 1034, 948.

On remand, the second ALJ held a hearing in April 2023, and, on June 1, 2023, the ALJ found that Plaintiff was not disabled.  AR 946-83, 914-38.

---

[1] Plaintiff amended his alleged onset date from March 2018 to May 2018, on the record at the April 2023 hearing.  *See* AR 982.  Contrary to Plaintiff's opening brief, the second ALJ found that Plaintiff had not engaged in substantial gainful activity since May 2018 – *not* March 2018.  Dkt. 9 at 2; AR 916.

[2] The relevant period for Plaintiff's DIB claim was, therefore, May 1, 2018, through his December 31, 2022 DLI.  By contrast, the relevant period for Plaintiff's SSI claim was January 2019, through the ALJ's June 2023 decision.  *See* 20 C.F.R. § 416.335 (Unlike DIB, SSI benefits are not retroactive to the date of disability onset, but are payable one month following the month in which the application was filed.).

**THE ALJ'S DECISION**

Utilizing the five-step disability evaluation process,[3] the second ALJ found:

**Step one**:  Plaintiff has not engaged in substantial gainful activity since May 1, 2018.

**Step two**:  Plaintiff has the following severe impairments: multiple sclerosis ("MS"), depressive disorder, and anxiety disorder.

**Step three**:  These impairments do not meet or equal the requirements of a listed impairment.[4]

**Residual Functional Capacity**:  Plaintiff can perform light work with additional postural, environmental, cognitive, and social restrictions.

**Step four**:  Plaintiff cannot perform his past relevant work.

**Step five**:  Based on the testimony of a Vocational Expert ("VE"), there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including power screwdriver operator, marker, collator operator, and document preparer, such that Plaintiff is not disabled.

AR 914-38.

Plaintiff appealed the final decision of the Commissioner to this Court.  Dkt. 4.  The parties consented to proceed before the undersigned Magistrate Judge.  Dkt. 2 .

**LEGAL STANDARDS**

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination."  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (cited sources

---

[3] 20 C.F.R. §§ 404.1520, 416.920.

[4] 20 C.F.R. Part 404, Subpart P., App. 1.

1   omitted).  The Court looks to "the record as a whole to determine whether the error alters the

2   outcome of the case." *Id.*

3          Substantial evidence is "more than a mere scintilla.  It means - and means only - such

4   relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

5   *Biestek v. Berryhill*, 587 U.S. --, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *Magallanes v.*

6   *Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for evaluating symptom

7   testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that

8   might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is

9   required to examine the record as a whole, it may neither reweigh the evidence nor substitute its

10  judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

11  When the evidence is susceptible to more than one rational interpretation, it is the

12  Commissioner's conclusion that must be upheld.  *Id.*

13                                         **DISCUSSION**

14         Plaintiff argues the ALJ erred by misevaluating his testimony and the medical opinion

15  evidence.  The Commissioner argues the ALJ's decision is free of harmful legal error, supported

16  by substantial evidence, and should be affirmed.

17  **A.      The ALJ Erred in Evaluating the Medical Opinion Evidence.**

18          **1.      Treating Neurologist Dr. Mesher's October 2019 Opinion**

19         Plaintiff currently challenges the second ALJ's evaluation of treating neurologist Dr.

20  Mesher's October 2019 opinion.

21         Dr. Mesher was one of Plaintiff's treating neurologists from November 2018, through

22  January 2020.  AR 542-94, 654-763.  Dr. Mesher submitted two opinions in Plaintiff's case:  one

23  in March 2019, and one in October 2019.  AR 477-81 (March 2019 opinion); AR 618-21

1    (October 2019 opinion).  Dr. Mesher diagnosed relapsing, remitting MS in both opinions.[5]  AR

2    618, 417.   In March 2019, Dr. Mesher opined that Plaintiff was capable of light work, and noted

3    that Plaintiff needed a subsequent MRI in July 2019.  AR 479.  Subsequently, in July 2019,

4    another MRI demonstrated a new lesion in Plaintiff's brain.  AR 554.  Thereafter, in October

5    2019, Dr. Mesher opined that Plaintiff's MS-related "pain, fatigue" and other symptoms would

6    interfere with his attention and concentration "frequently" –at least twenty percent or more—

7    during an eight-hour workday.  AR 619.  Dr. Mesher additionally opined that Plaintiff would

8    need to take fifteen to thirty minute unscheduled breaks every two hours during the workday, and

9    that Plaintiff's "bad days" would cause him to miss work three or more days per month.  AR

10   619.

11          The first ALJ acknowledged the existence of Dr. Mesher's earlier March 2019 opinion

12   that Plaintiff could perform light work, but did not evaluate the persuasiveness of the opinion.[6]

13   AR 994; *see generally* AR 993-1000.  The first ALJ subsequently found Dr. Mesher's October

14   2019 opinion not persuasive "for the reasons described later in this decision," which included

15   alleged inconsistencies with Dr. Mesher's own treatment notes and the objective medical

---

[5] Plaintiff was first diagnosed with MS in late 2018, by neurologist, Dr. Pavle Repovic, and MS specialist, Dr. Lucas McCarthy, after an October 2018 brain MRI, diagnostic testing, and treatment for symptoms. AR 493, 559.

[6] The medical opinion evidence regarding Plaintiff's MS-related functional limitations also included the May 2019 opinion from non-examining state agency physician, Dr. Guillermo Rubio, and the November 2019 opinion from non-examining state agency physician, Dr. Howard Platter, on initial review and reconsideration, respectively.  *See* AR 86-88, 99-101 (Dr. Rubio's opinion as to Plaintiff's SSI and DIB claims, respectively); AR 145-46, 161-62 (Dr. Platter's opinion as to Plaintiff's SSI and DIB claims, respectively).  The first ALJ found all of the state agency medical opinions "not persuasive," noting that the opinions "predated significant additional evidence of the claimant's activities," and finding that the ALJ's assessed RFC was supported by the longitudinal record.  AR 1000.

1   evidence."[7]  AR 997; *see also* AR 1021-24 (Court's March 2022 order construing first ALJ's

2   reasons for rejecting Dr. Mesher's October 2019 opinion).

3        Plaintiff challenged the first ALJ's evaluation of Dr. Mesher's October 2019 opinion in

4   his first appeal before this Court.  AR 1021-24.  In its March 2022 order, the Court rejected each

5   of the reasons proffered by the first ALJ, finding that they were not supported by substantial

6   evidence.  AR 1023-24.

7        In particular, the Court found that the ALJ erroneously disregarded portions of Dr.

8   Mesher's own treatment notes from October-December 2019, which themselves discussed

9   Plaintiff's MS symptoms.  AR 1023-24.  The Court further determined that the ALJ erred

10  regarding the consistency findings, finding that "[m]uch of the objective medical evidence cited

11  by the ALJ is . . . supportive of Dr. Mesher's [October 2019] opinion."  AR 1024 (citing AR 606,

12  644, 793, 649-51, 598-99, 733, 488, 723-24).  The Court ultimately found that there was

13  "ambiguity in the record concerning the specific work-related limitations associated with Dr.

14  Mesher's [October 2019] opinion," and remanded for the ALJ to reevaluate the opinion.  AR

15  1030.

16       On remand in June 2023, the second ALJ reevaluated all of the medical opinions,

17  including Dr. Mesher's October 2019 opinion, and found the challenged opinion was "not

18  persuasive."[8]  AR 931-32.  Plaintiff argues now that the Court's prior March 2022 order

19

20

21  [7] As Plaintiff previously noted, it is difficult to discern from the first ALJ's decision the particular reasons
    upon which the ALJ relied in rejecting Dr. Mesher's October 2019 opinion because those reasons were
22  not clearly articulated, but were instead buried within the ALJ's eight-page summary of evidence.  *See*
    AR 992-1000; *see also* C 21-887 TLF, Dkt. 11 at 11; C 21-887 TLF, Dkt. 12 at 11 (asserting that the ALJ
    found Dr. Mesher's opinion inconsistent with his own treatment records and other medical evidence).

23
    [8] The second ALJ also evaluated for the first time Dr. Mesher's March 2019 opinion, and reevaluated the
    first ALJ's findings regarding the state agency physician's opinions.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 6

1   regarding Dr. Mesher's October 2019 opinion is law of the case to the extent that the second ALJ

2   simply repeated the first ALJ's findings regarding the opinion. Dkt. 9 at 5. The Court disagrees.

3         As the Commissioner notes, at the time of the Court's March 2022 order, the Ninth

4   Circuit had not yet issued its April 2022 decision in *Woods v. Kijakazi*. *See* 32 F.4th 785 (9th

5   Cir. 2022). In *Woods*, the Ninth Circuit clarified that the 2017 regulations applicable to this case

6   "displace[d] [the Ninth Circuit's] longstanding case law" requiring an ALJ to articulate "specific

7   and legitimate reasons" for rejecting a treating physician's opinion where the opinion is

8   contradicted by other medical opinions. *Id.* at 787, 791. In this Court's March 2022 order issued

9   prior to *Woods*, the Court discussed the continuing applicability of the "specific and legitimate"

10   standard in evaluating the first ALJ's assessment of the challenged opinion, and ultimately

11   applied the standard, contrary to the Ninth Circuit's subsequent decision in *Woods*. AR 1023.

12   Given the legal standards applied by the Court previously and the Ninth Circuit's intervening

13   decision in *Woods*, the Court may not now apply law of the case to its prior March 2022 findings

14   *regarding Dr. Mesher's October 2019 medical opinion*. Accordingly, the Court considers below

15   *de novo* the second ALJ's evaluation of Dr. Mesher's opinion.

16         Under regulations applicable to this case, the ALJ is required to articulate the

17   persuasiveness of each medical opinion, specifically with respect to whether the opinions are

18   supported and consistent with the record. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). An

19   ALJ's consistency and supportability findings must be supported by substantial evidence. *See*

20   *Woods*, 32 F.4th at 792.

21         In terms of supportability, the second ALJ found that Dr. Mesher "provided no objective

22   findings to corroborate" his opined limitations, citing to Dr. Mesher's own 2019 visit notes. AR

23   931-32 (citing AR 1023, 998). In doing so, the ALJ mischaracterized and inappropriately

1    cherry-picked notations from within Dr. Mesher's own records, which indeed themselves

2    contained multiple references to Plaintiff's related MS symptoms.  *See, e.g.,* AR 555 (noting

3    Plaintiff "is troubled by lots of ongoing symptoms, including poor memory, sense of spaciness,

4    and occasionally slurs his words" and "continues to struggle in terms of mood"); *accord* AR 554

5    (in addition to previously described symptoms, Plaintiff struggles with "severe fatigue"); AR 711

6    (noting in December 2019 that although there were no "new" neurologic symptoms, Plaintiff

7    continued to suffer from "the same off and on paresthesias in his hands and feet").

8         Additionally, the second ALJ found that Dr. Mesher's opinion lacked supportability

9    because it was internally inconsistent regarding Plaintiff's need for "unscheduled breaks,"

10   suggesting that Dr. Mesher ignored the regular breaks allowed in a "typical eight-hour workday,"

11   thus "call[ing] into question" Dr. Mesher's opinion regarding "the percentage of the workday

12   [Plaintiff] would [experience] interference with attention and concentration."  AR 932.  The

13   Commissioner contends that the ALJ's reasoning here appears to be at least "partially correct,"

14   but that even if it was mistaken, alternative adequate reasons supported the second ALJ's

15   evaluation of Dr. Mesher's October 2019 opinion.  Dkt. 14 at 5.  Plaintiff, however, counters that

16   Dr. Mesher's opinion regarding Plaintiff's need for breaks was supported by his overall opinion,

17   noting that the cumulative need for the breaks opined to by Dr. Mesher would represent nearly

18   twenty percent of a full workday.  Dkt. 9 at 6-7.  The Court agrees, and further finds that the

19   ALJ's failed to adequately explain his own calculations and reasoning with respect to this

20   supportability factor; it is, therefore, not supported by substantial evidence.

21        For these reasons, the second ALJ's supportability findings were not supported by

22   substantial evidence.  The Court thus turns to the second ALJ's consistency findings regarding

23   Dr. Mesher's October 2019 opinion, which if supported by substantial evidence, would

1    themselves be sufficient to affirm the ALJ's evaluation of the opinion.  *See Woods*, 32 F.4th at

2    792-94 & n.4 (consistency and supportability constitute two distinct factors that should be treated

3    separately).

4        Regarding consistency, Plaintiff argues that the second ALJ mischaracterized his

5    neurology treatment when he found that Plaintiff "stopped following regularly with neurology

6    and stopped taking Tecfidera or any other neurological medication for MS."  AR 932; Dkt. 9 at

7    7.  The Commissioner, however, contends that the ALJ did not in fact discount Dr. Mesher's

8    opinion based on Plaintiff's failure to "regularly follow neurology," but instead that he

9    discounted the opinion based on Plaintiff's "normal physical examinations."  Dkt. 14 at 6

10   (asserting that "the ALJ did not say he was discounting Dr. Mesher's opinion because Plaintiff

11   stopped following 'regularly' with neurology").

12       Review of the ALJ's language, however, suggests that the ALJ indeed rejected Dr.

13   Mesher's opinion based in part on the underlying factual finding that Plaintiff "stopped

14   following regularly with neurology and stopped taking Tecfidera or any other neurological

15   medication for MS."  AR 932.  Relatedly, as the Commissioner notes, the ALJ also found that, in

16   spite of Plaintiff's failure to regularly follow neurology and take MS medications, he "continued

17   to have normal physical examinations."  AR 932.

18       Neither finding was accurate nor supported by substantial evidence.  First, regarding

19   Plaintiff's MS treatment and care, Plaintiff regularly saw Dr. Mesher and took his MS

20   medication, Tecfidera, from the time of his MS diagnosis through the time that Dr. Mesher

21   issued his challenged opinion in October 2019.[9]  AR 1358, 542-94, 654-763.

22

23

---

[9] The Court subsequently addresses in more detail Plaintiff's post-October 2019 neurological care and treatment as relevant to the ALJ's evaluation of Plaintiff's testimony.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 9

Second, the ALJ's reliance on Plaintiff's "normal physical examinations," "generally normal mental status," and "normal" presentation – along with Plaintiff's "manageable" and/or "intermittent symptoms" –  ignores the episodic nature of Plaintiff's MS and mischaracterizes the symptoms that he experienced.  AR 932.   Plaintiff's MS-related symptoms, which included fatigue, headaches, migraines, vision difficulties, paresthesia, brain fog, memory issues, and variable pain, waxed and waned throughout the relevant time period.  *See* AR 606, 655, 793, 1377, 1358, 1440, 1366-68, 1671, 1644, 1646, 1639, 1544, 905, 1729, 1732, 1735, 1738, 1747. Some symptoms were better than others at times, but review of the record, including the evidence specifically cited by the ALJ, indicates that Plaintiff continued to struggle with significant symptoms in one form or another throughout the relevant period – thus, supporting rather than undermining Dr. Mesher's October 2019 opinion.   *See* AR 606, 655, 793, 1377, 1358, 1440, 1366-68, 1671, 1644, 1646, 1639, 1544, 905, 1729, 1732, 1735, 1738, 1747. Moreover, as discussed in more detail below, the various medications that Plaintiff took for MS during the relevant period did not alleviate his symptoms; nor did his statements to his naturopath from 2020-2022 as cited by the ALJ suggest a sustained improvement in his MS.[10] *See* AR 898-910, 1725-60 (Plaintiff's 2020-2022 medical records from naturopath); *see* AR 932 (ALJ references naturopath records but fails to provide any specific citations).

As noted by Plaintiff, in minimizing Plaintiff's MS-related symptoms in conjunction with his rejection of Dr. Mesher's challenged opinion, the second ALJ was not adequately mindful of the nature of MS.  Indeed, the Ninth Circuit has recognized that MS is an "incurable" and "progressively disabling condition," characterized by "periods of remission and exacerbation," such that it "can be disabling notwithstanding normal activity in periods of remission."  *Estes v.*

---

[10] The Court additionally notes that Plaintiff was treated by the naturopath beginning in September 2020 – nearly one year after Dr. Mesher prepared the challenged October 2019 opinion. *See* AR 898-910.

*R.R. Ret. Bd.*, 776 F.2d 1436, 1438-39 (9th Cir. 1985) (quoting *Parish v. Califano*, 642 F.2d 188 (6th Cir.1981)) (noting similarities between social security regulations and the Railroad Retirement Act ("RRA"), and applying "the Sixth Circuit's well-reasoned application of the SSA standard to a multiple sclerosis victim" in holding that where the claimant suffered from MS, an ALJ who denied disability benefits under the RRA "erred in placing undue reliance on [a] brief and temporary interruption of plaintiff's progressively disabling condition" from a "period when petitioner worked and attended school").  That a claimant experiences temporary relief in symptoms and is able to resume normal activities, including school and/or work, during "a period of remission in a continuing disability" does not render the claimant not disabled.  *Id.; accord Welcome v. Colvin,* No. 2:13-CV-3041-JLQ, 2014 WL 1875159, at *6 (E.D. Wash. May 9, 2014) (holding that "the existence of asymptomatic periods [was] characteristic of the Plaintiff's [MS] and not a legitimate reason to reject [a] treating physician's opinion").  Here, Plaintiff's MRIs from 2018, 2019, and 2023, all demonstrated a progression in Plaintiff's MS, and provided objective medical evidence that supported the type of symptoms identified by Dr. Mesher in his October 2019 opinion and testified to by Plaintiff.  AR 494, 559, 1358, 1340, 1392, 1389, 1385, 1774.

For the above reasons, neither the second ALJ's supportability findings nor his consistency findings were supported by substantial evidence.  Because the ALJ relied in part on his evaluation of Dr. Mesher's opinion in assessing Plaintiff's RFC, the error was not harmless. The Court addresses below the parties' arguments regarding the appropriate remedy.

### 2.     Non-Examining Physician Dr. Platter's November 2019 Opinion

Plaintiff also contends that the second ALJ erred in his evaluation of non-examining state agency physician, Dr. Platter's November 2019 opinion.

1      In November 2019, Dr. Platter opined on reconsideration that Plaintiff was capable of

2   light work.  AR 145-46.  Dr. Platter considered Plaintiff's July 2019 MRI, which showed

3   additional lesions, but noted that at the time of Plaintiff's July 2019 MRI, Plaintiff's neurologist,

4   Dr. Mesher, continued to believe that he was "clinically stable" on Tecfidera, and that the

5   progression shown by the 2019 MRI did not require a medication change.  AR 141 (Dr. Platter

6   notes that the "[m]ost recent exam does note that MRI shows additional lesion but, MD feels this

7   is not indicative of change in treatment and claimant is noted to be doing well on current MS

8   meds"); *see also* AR 554 (Dr. Mesher notes the MRI showing progression in July 2019, but

9   opines that he does "not think that it is an indication to change treatment," but that "we will

10  continue to monitor [Plaintiff] closely" and recheck with a brain MRI in January 2020, and

11  consider then "whether a switch in treatment might be indicated").

12      As noted above, the first ALJ found Dr. Platter's opinion not persuasive; thus, Plaintiff

13  did not previously challenge the issue on appeal in 2021-2022.  AR 1000 (finding all of the

14  opinions by the state agency medical and psychology consultants not persuasive).  However, in

15  June 2023, the second ALJ made contrary findings on remand, reevaluating the first ALJ's

16  findings regarding the opinions from all of the state agency physicians and psychologists,

17  including Dr. Platter's challenged opinion.[11]  AR 930 (finding "partly persuasive" the prior

18  administrative medical findings).  Regarding Dr. Platter's opinion, the second ALJ found the

19  opinion was supported "by a broader range of medical evidence documenting [Plaintiff's] MS

20

21  _____

[11] The Court notes that in reevaluating the state agency physicians' opinions on remand, the ALJ appears
to have exceeded the scope of the Court's prior March 2022 remand order, which directed reconsideration

22  of *Dr. Mesher's* opinions and Plaintiff's testimony.  *See* AR at 1030 (emphasis added).  However,
Plaintiff has not raised that issue; accordingly, the Court addresses the issue as presented on appeal.

23  Additionally, as noted above, in June 2023, the second ALJ also evaluated in the first instance Dr.
Mesher's earlier March 2019 opinion, finding it partially persuasive regarding Plaintiff's capacity for
light work.  AR 930-31.

1   diagnosis, medical imaging, symptom reports, response to medications, and relatively

2   unremarkable neurological exams."  AR 931.

3        Plaintiff contends that the second ALJ erred because the information relied on by Dr.

4   Platter was dated and inaccurate, noting that soon thereafter, Dr. Mesher's own opinion changed;

5   that a subsequent 2020 MRI showed additional progression of the MS lesions; and that Plaintiff's

6   MS medications were indeed changed.  Dkt. 9 at 9-10.  Additionally, Plaintiff argues that Dr.

7   Platter failed to consider his complaint of severe fatigue.  Dkt. 9 at 10.

8        The Commissioner counters that Dr. Platter's opinion was supported by and consistent

9   with other record evidence and with Dr. Mesher's earlier March 2019 opinion.  Dkt. 14 at 8.  The

10  Commissioner also argues that the opinion was supported by the absence of evidence showing a

11  relapse, Plaintiff's "conservative" treatment, and the lack of a "significant" worsening of

12  Plaintiff's symptoms.  Dkt. 14 at 8.  Additionally, the Commissioner suggests that Dr. Platter's

13  failure to review the record, including his inability to anticipate the future 2020 MRI, is not

14  determinative because *the ALJ* had the opportunity to consider the record.

15       The Court agrees that the ALJ erred in his evaluation of Dr. Platter's opinion because it

16  lacked supportability.  Dr. Platter's opinion was based on the premature (and later faulty)

17  premise that Plaintiff was stable and did not require a change in his MS medications – a belief

18  initially held by Dr. Mesher in July 2019, but which Dr. Mesher himself – along with another

19  neurologist, Dr. Repovic –  changed only a few a months later when yet another MRI showed

20  progression, requiring a change in Plaintiff's MS medications.  Dr. Platter's opinion did not

21  account for these subsequent changes.

22       Additionally, for the reasons discussed above regarding Dr. Mesher's October 2019

23  opinion, along with those discussed below regarding Plaintiff's testimony, the second ALJ's

1   consistency  findings were also not supported by substantial evidence.  The ALJ erred in

2   minimizing and mischaracterizing Plaintiff's MS treatment and his symptoms.  *See* AR 606, 655,

3   793, 1377, 1358, 1440, 1366-68, 1671, 1644, 1646, 1639, 1544, 905, 1729, 1732, 1735, 1738,

4   1747.

5          The second ALJ's error in evaluating Dr. Platter's opinion was not harmless because the

6   ALJ assessed Plaintiff's RFC in part based on his evaluation of the opinion.

7          **B.        The ALJ Erred in Evaluating Plaintiff's Testimony.**

8          Plaintiff also appeals the second ALJ's June 2023 evaluation of his testimony.  He

9   previously challenged the first ALJ's December 2020 evaluation of his testimony in C21-887

10  TLF, which is accurately described in the Court's March 2022 order.  AR 1025.  As the Court

11  noted then, the first ALJ found Plaintiff's testimony inconsistent with the objective medical

12  evidence, Plaintiff's activities of daily living ("ADLs"), and Plaintiff's own statements.  AR 20,

13  28 (finding that Plaintiff's testimony was inconsistent with the "very few objective deficits," his

14  "significant" ADLs, and his statements regarding the intensity, persistence, and limiting effects

15  of his symptoms); *see also* AR 1024-28.  The Court considered and rejected each reason in its

16  March 2022 order, concluding that the ALJ failed to offer clear and convincing reasons

17  supported by substantial evidence.  AR 1024-28.  On remand, the Court ordered the ALJ to re-

18  evaluate Plaintiff's testimony and to provide "additional testimony and evidence, as necessary, to

19  clarify the record."  AR 1030.

20         In particular, this Court previously rejected the first ALJ's finding that Plaintiff's fatigue,

21  headaches, and pain were not adequately reflected by the medical record, holding that was not a

22  sufficient reason for rejecting Plaintiff's pain and other subjective complaints.  AR 1025-26

23  (citing AR 21-28).  Additionally, the Court found that the ALJ erred when she focused on certain

1  symptoms while disregarding other symptoms, and that the ALJ's citation to medical records

2  regarding Plaintiff's "alert, pleasant, and cooperative" or "unremarkable" demeanor evinced

3  improper "cherry-picking" of only those portions of the records that supported the ALJ's

4  assessment.  AR 1026 (noting that "the ALJ cited to treatment notes that do not discuss

5  [P]laintiff's fatigue or explicitly state that [P]laintiff denied headaches" even though "those same

6  notes show[ed] that [P]laintiff experienced neck pain, vision problems, and depression").

7        In March 2022, this Court also found that the ALJ had improperly characterized

8  Plaintiff's ADLs and had "penalized [Plaintiff] for attempting to lead [a] normal li[f[e in the face

9  of [his] limitations," noting that the ALJ failed to explain how Plaintiff's activities contradicted

10  his testimony.  AR 1027.  Finally, the Court held that Plaintiff's allegedly inconsistent statements

11  to which the ALJ pointed did not justify the "wholesale dismissal" of Plaintiff's testimony.  AR

12  1028.

13        Subsequently, in April 2023, on remand before the second ALJ, Plaintiff further testified

14  regarding the MS symptoms that he described in his testimony at the prior December 2020

15  hearing before the first ALJ.  AR 946-82; *cf.* AR 1037-77.  Plaintiff explained that in the two and

16  one-half years between hearings, "there [was] nothing with my MS that's been resolved at all,"

17  and noted that at the time of the 2023 hearing, he was then experiencing a relapse.  AR 954.

18  Plaintiff acknowledged that his various symptoms waxed and waned over the years, explaining

19  that at times his vision would "start[] coming back," but then his paresthesia in his hands and

20  legs "really started going downhill."  AR 955.  Plaintiff testified that as of the 2023 hearing, he

21  was suffering from headaches, migraines, neck pain, tingling hands, leg problems, and a loss of

22  grip, and that he had been in bed for three days and was, in fact, in bed at the time he testified

23  telephonically for the hearing.  AR 957.

1    Plaintiff also testified in 2023, that he had been on his current MS medication for

2    approximately one and one-half years, and that he hadn't felt good on his MS medications from

3    the "get go." AR 969.  Plaintiff explained that he experiences "bad" days approximately five to

4    six days per week, and that with his MS, he rarely has a "fully good day."  AR 961.  Plaintiff

5    noted that he had recently undergone an MRI in February 2023 that demonstrated hyperintense

6    lesions in his brain that had worsened since his 2021 MRI.  AR 960.  As a result of his MS and

7    symptoms, Plaintiff testified that he had not engaged in playing music, camping, fishing, or

8    woodworking since the prior 2020 hearing.  AR 969.

9    On remand, the second ALJ similarly rejected Plaintiff's testimony.  *See* AR 922-29; *see*

10   *also* AR 1024-28.  Like the first ALJ, in rejecting Plaintiff's testimony, the second ALJ

11   referenced a seven-page summary of the medical evidence, and his reasons are largely buried in

12   the lengthy summary of evidence.[12]  *See* AR 922, 922-29.  While the Court has, to the best of its

13   ability, ascertained and addressed the second ALJ's reasons for rejecting Plaintiff's testimony,

14   the Court nevertheless notes that, in future decisions, the ALJ should more clearly and explicitly

15   set forth the reasons for rejecting a claimant's testimony.  *See Bunnell v. Sullivan*, 947 F.2d 341,

16   346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the

17   grounds for an adjudicator's rejection" of certain evidence).

18   The second ALJ found that Plaintiff's "medically determinable impairments could

19   reasonably be expected to cause some of the alleged symptoms" but that his "statements

20   concerning the intensity, persistence, and limiting effects of the[] symptoms [were] not entirely

21   consistent with the medical evidence and other evidence in the record," and no affirmative

22   evidence of malingering.  AR 922.  Accordingly, the ALJ was required to provide "specific,

23

---

[12] This is nearly identical to the first ALJ's evaluation of Plaintiff's testimony in which the ALJ similarly summarized the medical evidence.  *See* AR 21-28.

1    clear and convincing reasons" for rejecting Plaintiff's testimony concerning the intensity,

2    persistence, and limiting effects of his symptoms.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039

3    (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)); *accord Smartt v.*

4    *Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (confirming that the "clear and convincing" standard

5    continues to apply).

6        Close review of the second ALJ's reasons for rejecting Plaintiff's testimony demonstrates

7    that, to a large degree, the second ALJ reiterated and repackaged several of the reasons offered

8    by the first ALJ for rejecting Plaintiff's prior testimony – reasons that this Court previously

9    found to be insufficient and unsupported by substantial evidence.  *See* AR 922-29; *see also* AR

10   1024-28.  Those repackaged reasons included findings that:  (1) Plaintiff's symptoms were

11   "bothersome" but were not as severe and/or limiting as Plaintiff testified, and that Plaintiff's

12   headaches and neck pain actually improved,  AR 925-926; and (2) Plaintiff's symptom testimony

13   was inconsistent with the medical evidence which included "normal" findings, including, among

14   others, Plaintiff's presentation as alert and oriented, with a normal gait, coordination, and motor

15   strength, and intact and symmetrical reflexes.  AR 926.

16       In addition to the above repackaged reasons, the second ALJ also offered what appear to

17   be two "new" related reasons for rejecting Plaintiff's testimony concerning his MS treatment and

18   the progression of the illness.  First, as with Dr. Mesher's opinion, the ALJ cited Plaintiff's

19   "inconsistent engagement with neurological monitoring and medication management."  AR 922.

20   The ALJ suggested that Plaintiff was "stable except for the imaging changes while on

21   Tecfidera," but then noted that Plaintiff later "opted instead to treat [his MS] with non-

22   prescription protocols such as diet and vitamins."  AR 925.  The ALJ relied on Plaintiff's

23   "naturalistic treatment" and "minimal medication" in rejecting Plaintiff's testimony, stating that

such treatment, in turn, suggested that Plaintiff's symptoms were "manageable" and not consistent with his testimony.  AR 925.  The ALJ further asserted that despite Plaintiff's "inconsistent" treatment, the medical evidence did not show "severe progression or extended severe relapse" in Plaintiff's MS symptoms, thus suggesting that Plaintiff's related testimony was inconsistent with the medical evidence.  AR 922.  The ALJ also stated that the record showed that Plaintiff demonstrated a "better response to treatment" than that testified to by Plaintiff.  AR 923.

The Court addresses below, in turn, the ALJ's reasons.

### 1.    ALJ's Minimization of Plaintiff's Symptoms and Alleged Inconsistency with Medical Evidence

At the outset, the Court notes this category includes the second ALJ's findings that simply repeated earlier findings already rejected by the Court in its 2022 order  *See* AR 1024-28. Unlike Dr. Mesher's opinion discussed above, there is no dispute that in its March 2022 order, the Court applied the correct legal standards in rejecting Plaintiff's testimony.  *See* AR 1024-26. Accordingly, to the extent the second ALJ simply repeated reasons previously addressed and rejected by the Court, law of the case applies.

However, to the extent that the second ALJ articulated additional reasons for rejecting Plaintiff's testimony in 2023 – such that law of the case doctrine does not apply to those reasons – *de novo* review likewise demonstrates that the second ALJ improperly cherry-picked certain notations from the record evidence, and ignored evidence that Plaintiff's symptoms waxed and waned.

Plaintiff argues that the medical evidence cited by the ALJ fails to demonstrate inconsistencies as to his testimony regarding fatigue, vision disturbance, brain fog, and cognitive challenges.  Dkt. 9 at 8, 13, 15.  In opposition, the Commissioner acknowledges that Plaintiff had

ongoing symptom complaints, but contends that the ALJ reasonably rejected Plaintiff's

testimony regarding the intensity of his symptoms, and accommodated the symptoms with the

ALJ's assessed RFC limitations.  Dkt. 14 at 11.  The Court disagrees.

Even if Plaintiff's migraines were controlled at times by medications, the improvement in

his headaches did not obviate his other symptoms, including his cognitive and physical fatigue,

distorted vision, intermittent paresthesia, and brain fog.  Dkt. 15 at 8 (citing AR 1732); *see also*

AR 1025.   Additionally, the ALJ's reliance on certain "normal" medical findings, like Plaintiff's

"presentation as alert and oriented," with "normal gait, coordination, normal motor strength,

intact and symmetrical reflexes" ignored the nature of Plaintiff's MS and also placed undue

emphasis on observations that did not impact the severity of Plaintiff's symptoms and/or related

limitations.  AR  926.

## 2.     Plaintiff's MS-Related Noncompliance, Conservative Treatment, and Absence of Progression

As noted above, the second ALJ also offered what appear to be two additional related

reasons for rejecting Plaintiff's testimony concerning his MS treatment and the progression of

his illness.

Plaintiff argues that the ALJ's characterization of his neurological monitoring and

medication management is inaccurate. [13]  Dkt. 9 at 7.  He notes record evidence that he

temporarily stopped taking his MS medications in May 2021 because they made him very sick –

a fact the ALJ failed to consider – and that he subsequently resumed MS medications in the form

of a new monthly injection in or around February 2022.  Dkt. 9 at 13 (citing AR 924, 1715); Dkt.

9 at 14 (AR 1638, 1775).  Plaintiff further argues that his attempt to use naturopathic treatment in

---

[13] Plaintiff notes that he did not contend that his unstable mood prevented him from working, and, therefore, to the extent the ALJ relied on his reluctance to take a mood stabilizer, that is irrelevant.  Dkt. 9 at 13 (citing AR 927).  The Court agrees.

1    an effort to alleviate his need for stronger pain medications should not undermine his testimony.

2    Plaintiff also points out that he encountered insurance issues with his MS medications.

3           The Commissioner counters that Plaintiff's "overall conservative and naturalistic

4    approach to treatment" undermined his testimony.  Dkt. 14 at 11 (citing *Smartt*, 53 F.4th at 500).

5    In support, the Commissioner notes Plaintiff's attempt to minimize his use of pain medications

6    and his failure to comply with MS injections.  Dkt. 14 at 12.

7           Plaintiff replies that this case is distinguishable from the *Smartt* case, as relied on by the

8    Commissioner, because MS is an incurable disease, which Plaintiff contends is typically

9    "managed" by treatments, some of which may be considered "conservative."  Dkt. 15 at 7

10   (discussing *Smartt*, 53 F.4th at 500) (finding that ALJ reasonably discounted Plaintiff's

11   testimony where Plaintiff received generally "conservative treatment" for cervical pain following

12   a slip and fall accident).  Plaintiff asserts that he tried alternative and additional therapies *in

13   addition to* the typical MS treatments, and that he chose to discontinue physical therapy because

14   it made his pain worse.  Dkt. 15 at 8.  Plaintiff further acknowledges that he utilizes stronger pain

15   medications when his pain is "really bad."  Dkt. 15 at 8 (citing AR 870).  Finally, Plaintiff

16   acknowledges that there was a lapse in his MS injections when "lines got crossed" with the

17   pharmacy, but notes that the issue was resolved and he resumed the MS injections.  Dkt. 15 at 8

18   (citing AR 966).

19          Review of the record reveals that the ALJ failed to portray an accurate picture regarding

20   Plaintiff's MS treatment during the relevant period.  From Plaintiff's diagnosis in late 2018,

21   through February 2023, Plaintiff was treated by at least three neurologists, including Drs. Mesher

22   and Repovic in Seattle from October 2018, through October 2020, and, subsequently, Dr. Amir

23   Mazhari, in Mt. Vernon, Washington, from July 2021, through February 2023.  AR 542-94, 654-

763 (Dr. Mesher); AR 1358-1440 (Dr. Repovic); AR 1623-86, 1761-83 (Dr. Mazhari).  During the four and one-half year period, Plaintiff underwent treatment with at least three different MS medications and/or injections, including Tecfidera, Zeposia, and most recently, Kesimpta.  AR 1358-59, 1385, 907.  Plaintiff complained of side effects of varying degrees of severity while on each of the medications.  AR 906-07.

The ALJ erred in finding that Plaintiff's desire to pursue naturopathic treatment ended his "stable regimen" on his MS medications.  *See* AR 925.  To the contrary, Plaintiff's neurologists discontinued his first MS medication, Tecfidera, in 2020, citing "evidence of insufficient response" to the medication after two MRIs demonstrated new and/or growing lesions, and after Plaintiff experienced additional symptoms.  AR 1358, 1340, 1392, 1389, 1385.  Thereafter, Plaintiff's insurance refused to cover the next recommended MS treatment, and it took some time for Plaintiff's then-neurologist, Dr. Repovic, to transition Plaintiff to yet another MS medication, Zeposia, around October 2020. AR 1358, 1360.  Around that same time, Plaintiff began additional MS treatment with a naturopath, Dr. Pinkleton.  AR 905-07.  In late 2020, Plaintiff reported to the naturopath that he was following a strict diet recommended for MS and that he was taking Zeposia, and it was while he was still taking Zeposia that Plaintiff subsequently began taking supplements and vitamins prescribed by Dr. Pinkleton.  AR 907, 1725-1760.

In May 2021, after a residential move, Plaintiff reported to his new primary care physician ("PCP") that he had since stopped his MS medications because they made him "very sick," and that he was seeing a naturopath who was treating his MS, but that his MS symptoms were worsening.  AR 1715.  Plaintiff requested from his PCP a referral to a neurologist closer to his new home.  AR 1715.  Plaintiff subsequently saw Dr. Amir Mazhari beginning in July 2021**,**

1   and Dr. Mazhari continued to see Plaintiff through the final February 2023 records contained in

2   the AR.  AR 1774-1783.

3        Dr. Mazhari's notes state that Plaintiff initially resisted Dr. Mazhari's alternative

4   recommended MS medications "due to GI side effects," but that Dr. Mazhari nevertheless

5   convinced Plaintiff in 2021 to commence a new MS medication, Kesimpta, in the form of

6   injections.  AR 1641-51.  During 2022, miscommunications with Dr. Mazhari and the pharmacy

7   delayed Plaintiff's injections, and Plaintiff also complained to his PCP that he was having

8   difficulty obtaining follow-up appointments with Dr. Mazhari.  Dr. Mazhari subsequently

9   persuaded Plaintiff to try physical therapy, which, he did.  AR 1536-38.  However, Plaintiff

10  reported to his PCP that the physical therapy made his pain "worse."  AR 1536-38.  Around that

11  same time, Plaintiff requested a referral to a new neurologist based on his dissatisfaction with Dr.

12  Mazhari; however, it does not appear from the record that Plaintiff switched neurologists.  *See*

13  AR 1538, 1774-83.

14       Plaintiff continued with Dr. Mazhari, and in February 2023, Plaintiff underwent another

15  MRI that showed progression of his MS.  AR 1774.  At that time, Plaintiff was being treated

16  with Kesimpta, and was experiencing brain fog, difficulty concentrating, neck and shoulder pain,

17  and palpitations.  AR 1775, 1778, 1780.  Dr. Mazhari admonished Plaintiff regarding the

18  seriousness of his condition and his need for ongoing treatment and monitoring.  AR 1778.  At

19  the April 2023 hearing, Plaintiff testified that he was then in the midst of an MS relapse, and that

20  his most recent MRI showed progression.  AR 966.  As a result, according to Plaintiff, he was in

21  the process of transitioning to a new MS medication from Kesimpta.[14]  AR 966.

22

23

---

[14] The AR does not include any records after February 2023, so it is unclear whether that occurred and
what treatment Plaintiff has received for his MS post-February 2023.

1    Thus, although the record demonstrates short gaps in Plaintiff's MS treatment, the second

2    ALJ erred in equating those gaps with an improvement in Plaintiff's symptoms and/or a lack of

3    progression of Plaintiff's MS.  *See* AR 922-30.  Moreover, the record demonstrates that

4    Plaintiff's noncompliance was caused at least in part by insurance issues, a residential move,

5    difficulties obtaining appointments with Dr. Mazhari, miscommunications with a pharmacy, and

6    side effects from Plaintiff's multiple MS medications.  *See, e.g.,* AR 1358-60, 1715, 1641-51,

7    906-07, 1536-38.  Although Plaintiff repeatedly acknowledged that he preferred a more natural

8    approach to his MS treatment, he was unable to follow a purely naturopathic approach given his

9    worsening symptoms and the progression of his MS.  *See* AR 1715, 1641-51, 1778.  Instead,

10   Plaintiff's naturopathic treatment, for the most part, constituted a supplement to his other

11   neurological treatment and MS medications.  Furthermore, other than to point to a gap in

12   Plaintiff's subcutaneous MS injections, the ALJ did not identify any more aggressive care that

13   Plaintiff could have or should have received for his MS.  *See Gypsy B. v. Comm'r of Soc. Sec.*,

14   No. C19-935-MLP, 2019 WL 6650506, at *4 (W.D. Wash. Dec. 6, 2019) (holding that ALJ

15   erred in rejecting Plaintiff's testimony and medical opinion regarding the symptoms and

16   limitations associated with her fibromyalgia where Plaintiff "tried various medications that she

17   reacted badly to or that did not help" and "where [Plaintiff] was unable to afford to continue

18   treatments that did help").

19   The ALJ also suggested that absent evidence of a severe relapse or progression,

20   Plaintiff's testimony regarding his symptoms and associated limitations was unsupported.  AR

21   925.  In support, the ALJ acknowledged that Plaintiff's MRIs confirmed his MS diagnosis and

22   even showed "new lesions or areas of enhancement" during the relevant period.  AR 925.

23   However, the ALJ found "there did not appear to be corresponding clinical neurological

decline," noting that the medical evidence did not show Plaintiff was blind, bedridden, or housebound.  AR 925.

Plaintiff argues that the ALJ erred in discounting his testimony for this reason because his MS could, at times, be controlled and stable, but it was nevertheless disabling.  Dkt. 9 at 11 (citing AR 511, 509, 503, 493, 506, 551, 557, 556, 555, 554, 606, 711, 678, 793-97, 802-17, 772, 776, 1671, 1644, 1561, 1479, 1638-40, 1775).  In opposition, the Commissioner counters that the medical evidence supported the ALJ's reasoning.[15]  *See* Dkt. 14 at 10 (citing AR 1359, 1373, 1383, 1391, 1531, 1561, 1638, 1644, 1649, 1671).

For all of the reasons already described above regarding Dr. Mesher's opinion, Plaintiff's MS symptoms waxed and waned as expected of MS, and the ALJ's characterization of Plaintiff's MS symptoms was not supported by substantial evidence.  *See* AR 606, 655, 793, 1377, 1358, 1440, 1366-68, 1671, 1644, 1646, 1639, 1544, 905, 1729, 1732, 1735, 1738, 1747.  Moreover, Plaintiff's most recent 2023 MRI, which the ALJ failed to adequately account for, demonstrated progression, and Plaintiff's 2023 testimony noted a relapse of his MS.  AR 1778, 966.  As such, the ALJ's related suggestion that Plaintiff had a "good response" to MS medications, ignored the record evidence otherwise and the nature of the disease.

Accordingly, the second ALJ failed to articulate a specific, clear, and convincing reason supported by substantial evidence for rejecting Plaintiff's testimony.

## C.    Remedy

Plaintiff requests the Court remand with instructions for an immediate award of benefits beginning March 1, 2018.  Dkt. 9 at 16-17; Dkt. 15 at 9.   In doing so, Plaintiff acknowledges the three requirements of the "credit-as-true" test that must be satisfied.  Dkt. 9 at 16.

---

[15] The Commissioner cites to evidence not relied upon by the ALJ.

First, the ALJ must have "'failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'"  *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). Second, the Court must conclude "'the record has been fully developed and further administrative proceedings would serve no useful purpose.'"  *Id.*  In so doing, the Court considers the existence of "outstanding issues" that must be resolved before a disability determination can be made.  *Id.* (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014)).  Third, the Court must conclude that, "'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'"  *Id.* (quoting *Garrison*, 759 F.3d at 1021).

The Court finds that the first and third prongs set forth above are satisfied.  First, for the reasons discussed above, the Court has already found that the second ALJ erred in evaluating Dr. Mesher's October 2019 opinion and Dr. Platter's November 2019 opinion, and that the ALJ failed to provide adequate reasons for rejecting Plaintiff's testimony regarding his MS symptoms and limitations.  Regarding the third prong, the VE testified that if Dr. Mesher's October 2019 opinion is credited as true, Plaintiff would be unable to sustain full-time competitive work.  *See* AR 976-78.

Accordingly, at issue is the second prong:  whether further proceedings would serve any useful purpose and whether there are any outstanding issues that remain.  Plaintiff contends that the ALJs have twice failed to properly evaluate the medical opinion evidence and his testimony, and that given the delay and the nature of MS as a progressive disease, remand for an award of benefits is appropriate.  Dkt. 9 at 17.  The Commissioner counters that remand for further proceedings is appropriate for the ALJ to resolve the inconsistencies between Dr. Mesher's

1    March 2019 and October 2019 opinions, and to further consider the inconsistencies between

2    Plaintiff's statements regarding his symptoms, as captured by the medical records, and his

3    testimony regarding his "bad days."  Dkt. 14 at 14.  Plaintiff replies that remand for the ALJ to

4    evaluate the consistencies between Dr. Mesher's March 2019 and October 2019 opinions is not

5    warranted given the fact that Dr. Mesher's October 2019 opinion was more limiting because of

6    the progression of Plaintiff's MS.  Dkt. 15 at 9.

7           The Court concludes that a narrow remand for further proceedings is appropriate to

8    resolve the outstanding issues.  Specifically, the Court finds that further proceedings are

9    warranted for the ALJ to reconsider Dr. Mesher's March 2019 and October 2019 medical

10   opinions – but *not* for a wholesale reevaluation of the medical opinion evidence.

11          Much like Dr. Platter's 2019 opinion, Dr. Mesher's March 2019 opinion was offered

12   prior to Plaintiff's subsequent MRIs, which demonstrated the progression of Plaintiff's MS

13   lesions and the need to change Plaintiff's medications.  Thus, like Dr. Platter's opinion, it

14   appears that differences between Dr. Mesher's March 2019 and October 2019 opinions may be

15   explained by the progression of Plaintiff's MS rather than by a true inconsistency in Dr.

16   Mesher's opined functional limitations.  However, because this particular issue has not yet been

17   addressed by the ALJ, the Court will remand for further proceedings so that the ALJ may

18   consider and explicitly address the reason(s) for the differences between Dr. Mesher's March

19   2019 and October 2019 opinions.  Prior to rejecting either opinion, the ALJ is required to provide

20   supportability and consistency findings that have not already been advanced previously by the

21   ALJ and addressed and rejected by the Court.

22          The Court, however, declines to remand for further proceedings permitting the ALJ to

23   reevaluate wholesale Plaintiff's existing testimony.  This case does not exist in a vacuum.  Two

ALJs have already had opportunities to evaluate Plaintiff's testimony; and, for the reasons set forth in this order and in the Court's prior March 2022 order, the Court has twice found that the ALJs' multiple reasons for rejecting Plaintiff's testimony were not adequate or supported by substantial evidence.  Notably, both ALJs already compared Plaintiff's testimony with his statements from the medical records and, for the reasons set forth in this order and the Court's prior March 2022 order, twice erred with regarding inconsistent statements.  Thus, contrary to the Commissioner's request otherwise, further proceedings are not warranted to allow the future ALJ a third opportunity to compare Plaintiff's testimony with statements contained in his medical records.  *See Garrison,* 759 F.3d at 1021 (citations omitted) (further proceedings are unnecessary for the Commissioner to have another opportunity to decide the issue where doing so "would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication").

Instead, in the upcoming third round of proceedings on remand, the ALJ may reevaluate Plaintiff's testimony only to the extent that such reevaluation is necessitated by the ALJ's consideration of the differences between Dr. Mesher's March 2019 and October 2019 opinions. Prior to discounting Plaintiff's testimony, the ALJ is required to provide sufficient reasons that have not already been rejected by the Court in the current or prior March 2022 order as insufficient.

Additionally, the Court acknowledges that the relevant periods associated with Plaintiff's SSI and DIB claims differ.  Accordingly, on remand, the ALJ should explain how any findings on the limited issues described above impact the different relevant periods associated with the DIB and SSI claims.

Finally, the Court notes that in the current appeal, Plaintiff has requested benefits commencing March 2018, but that Plaintiff previously amended his onset date to May 2018.  AR 982, 916.  While this appears to be a mistake on Plaintiff's behalf, on remand, the ALJ should also address and resolve the appropriate onset date.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).  As noted above, the remand is narrow and is not for a wholesale reevaluation of the medical opinion evidence and/or Plaintiff's testimony.  Instead, the ALJ shall consider the reason(s) for the difference between Dr. Mesher's March and November 2019 opinions, and reevaluate Dr. Mesher's two opinions and Plaintiff's testimony only as warranted by the ALJ's consideration of that particular issue.

Dated this 17th day of April, 2024.

S. KATE VAUGHAN
United States Magistrate Judge